IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SHERRY EILEEN HAWKINS | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Case No. 12-cv-128 |
| The Edison Credit Union | ) |
| Serve at: | ) |
| The Edison Credit Union | ) |
| c/o Ron Miller, President | ) |
| 4200 East Front Street | ) |
| Kansas City, MO 64120-1088 | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Sherry Eileen Hawkins, by and through her attorneys at Tracy L. Robinson & Associates, L.C., who, pursuant to 15 U.S.C. § 1681, in her Complaint for Damages states and alleges to the Court as follows:

**INTRODUCTION**

1. This case seeks relief for Plaintiff from Defendant's willful and numerous consumer reporting violations in connection with a debt the Plaintiff discharged in bankruptcy. In short, Defendants violated the Fair Credit Reporting Act (hereafter "**FCRA**"), 15 U.S.C. § 1681, *et seq*, by failing to properly conduct a reasonable reinvestigation and correct the reporting mistakes on Plaintiff's Experian and Equifax credit reports. This failure continued after multiple notices from the bankruptcy court and even after Defendant was notified of Plaintiff's dispute

1

letters sent to TransUnion, Experian and Equifax. Defendant's conduct was not only a violation of the FCRA, but the Defendant's willful and unreasonable behavior, resulted in, among other things, the Plaintiff's inability to secure credit to repair the roof on her residence, the Plaintiff's emotional distress, humiliation, and inconvenience. Plaintiff is asserting claims for actual damages, statutory damages, punitive damages, attorneys' fees and the costs of this action.

## JURISDICTION AND VENUE

2. Jurisdiction over this proceeding arises from 15 U.S.C. § 1681 and generally under 28 U.S.C. § 1331.

3. Venue in this Court is proper in that the Defendant transacts business in the state of Missouri and here is where the injury occurs.

## PARTIES AND SERVICE

4. Sherry Eileen Hawkins (hereafter "**Plaintiff**"), is a natural person who, at all times relevant, resides in the State of Missouri.

5. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act (hereafter "**FCRA**"), 15 U.S.C. 1681, *et seq*.

6. Defendant, The Edison Credit Union hereafter ("**Defendant**"), was and is a domestic credit union conducting business in Missouri and may be served c/o Ron Miller, president at its address 4200 East Front Street, Kansas City, MO 64120-1088.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. At some point on or around January 2004, Plaintiff acquired credit from Defendant for her personal and household use, hereafter ("**Credit Account #1**").

2

8. Approximately 10 months later, Plaintiff acquired a second credit account from Defendant for her personal and household use, hereafter ("**Credit Account #2**")

9. One year later, the Plaintiff became insolvent.

10. On October 14, 2005, Plaintiff filed a Chapter 13 Bankruptcy in the Western District of Missouri, Case No. 05-70127-jwv13.

11. The Bankruptcy Notice of Filing was entered on October 16, 2005, showing Defendant was sent notice of Plaintiff's bankruptcy.

12. The BNC Certificate of Mailing of the Notice of Filing Bankruptcy is attached as Exhibit A.

13. Defendant was listed on Plaintiff's Schedule F of the bankruptcy filing as an unsecured creditor.

14. The pertinent page of Plaintiff's Bankruptcy Schedule F listing Defendant as a creditor in the Chapter 13 bankruptcy is attached as Exhibit B.

15. Plaintiff's Chapter 13 Bankruptcy Plan was confirmed on December 12, 2005.

16. The Notice of Plan Confirmation with Defendant receiving notification is attached as Exhibit C.

17. On March 24, 2006, the Chapter 13 Trustee mailed the Notice Allowing & Disallowing claims in Plaintiff's pending Chapter 13 Bankruptcy.

18. The Notice Allowing & Disallowing claims listing Defendant as a creditor is attached as Exhibit D.

19. During Plaintiff's bankruptcy, Defendant was further sent Notice of Confirmation of an Amended Plan (Exhibit E), Notice of Completion (Exhibit F), Notice of Discharge (Exhibit G) and the Notice of Trustees Final Accounting (Exhibit H), all attached to the Complaint.

20. Plaintiff received her discharge on August 9, 2010, and her Chapter 13 bankruptcy was closed on November 2, 2010.

21. During the time Plaintiff was in and subsequently discharged from her Chapter 13 Bankruptcy, Defendant received no less than seven notifications from the Bankruptcy court.

22. Around the same time as the discharge, the city of Independence notified Plaintiff that the roof on her house had become in disrepair and that she would be required to replace the roof.

23. Plaintiff applied to Bank of the West (hereafter "**West**") to acquire a home equity line of credit which would enable her to purchase a new roof.

24. On January 21, 2011, West denied Plaintiff's request.

25. In the denial letter, West stated reasons for the denial.

26. Among other things, West's denial of credit to the Plaintiff was predicated "due to the amount owed on delinquent accounts."

27. West's denial letter is attached as Exhibit I.

28. After reviewing her credit reports, Plaintiff became aware Defendant was misreporting information on her credit reports.

29. Defendant was reporting multiple things incorrectly on both the Equifax and Experian credit reports, not the least of which were Plaintiff's current balances of $73 on Credit Account #1 and $4,290 on Credit Account #2.

30. However, Plaintiff discharged the debt owed to Defendant in her Chapter 13 bankruptcy.

4

31. Plaintiff wrote dispute letters, with her bankruptcy discharge attached, to the three major credit bureaus, Transunion, Equifax, and Experian, to dispute Defendant's incorrect reporting.

32. An example of one of Plaintiff's dispute letters is attached as Exhibit J.

33. On April 21, 2011, Plaintiff applied to Embrace (hereafter "**Embrace**") Home Loans to again try to secure a home equity line of credit to make the necessary repairs on her home.

34. Plaintiff was again denied credit based on her credit score.

35. With the denial, Embrace provided the Plaintiff with a Disclosure of Credit Score Information and a credit report containing information provided by Equifax.

36. The Disclosure along with Plaintiff's Credit Report is attached as Exhibit K.

37. Despite the Plaintiff's dispute letters, Defendant continued willfully misreporting to Equifax and Experian that both Credit Account #1 and Credit Account #2 had delinquencies, totaling $4,363.

38. As a result of Defendant's failure to conduct a reasonable investigation of the Plaintiff's accounts on Experian & Equifax, Plaintiff has been unable to secure credit to repair her home.

39. If Plaintiff cannot secure credit to finance the repairs needed to her roof, she may be forced to move out from the home.

## FCRA LAW COMMON TO ALL COUNTS

40. The Defendant qualifies as a "furnisher of information to credit reporting agencies" within the meaning of the FCRA.

41. The FCRA prohibits furnishers of information to credit reporting agencies to

furnish information which is inaccurate, irrelevant, and improper, or which such furnishers have reason to believe is inaccurate.

42. Delinquencies, account balances, and other repayment information on a loan is consumer report information to credit reporting agencies within the purview of the FCRA.

43. The FCRA also provides privately enforceable duties limited to the formal process where consumers may dispute the accuracy and completeness of information by initiating a reinvestigation through the credit reporting bureau (hereafter "**CRA**"). 15 U.S.C. § 1681i.

44. After receipt of a disputed account from the CRA, a furnisher's duty is to review the information provided and conduct its own investigation of the accuracy and completeness of the disputed information.

45. The courts have consistently adopted that the standard of the furnisher's reinvestigation must be evaluated under a reasonable investigation standard.

46. This standard will be evaluated from a number of factors.

47. One specific obligation is that the furnisher must consider the information communicated in or with the notice of dispute from the CRA. 15 U.S.C. § 1681i(a)(1)(A).

48. In addition, the furnisher must also consider other information available to it, including earlier complaints or other communications received from the consumer before the reinvestigation ever began. *Bruce v. First U.S.A. Bank*, 103 F.Supp.2d 1135 (E.D. Mo. 2000).

49. Any furnisher who fails to comply with the investigation requirements is liable to the consumer for actual damages, the costs of litigation, and attorney fees. 15 U.S.C. § 1681o.

50. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000 per violation, for punitive damages, as well as for

costs and attorney fees. 15 U.S.C. § 1681n.

51. A furnisher such as Defendant acts willfully in violation of the FCRA by acting with "reckless disregard" of any consumer right set forth in the FCRA. Reckless disregard entails an unjustifiably high risk of violating the law that is either known or so obvious that it should be known. Defendant may also willfully violate the FCRA by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights under the FCRA. Note that reckless disregard need not be knowing, intentional, premeditated or malicious. The Plaintiff here does not need to show that Defendant deliberately violated the law, only that it acted with reckless disregard for his consumer rights. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57-68 (2007); 15 U.S.C. § 1681n; *Levine v. World Financial Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721-23 (3d Cir. 2010).

## CAUSES OF ACTION

### COUNT I
**(Violations under the Fair Credit Reporting Act reporting to Experian)**

51. Plaintiff repeats, realleges and incorporates by reference each and every prior paragraph in this Complaint.

52. After being denied credit in January 2011 by West, Plaintiff reviewed her credit reports.

53. Defendant was furnishing inaccurate information to Experian (a credit reporting agency) when:

    a. Defendant reported that Plaintiff had Credit Account #1, with a $73 balance;

    b. Defendant continued negatively reporting on Credit Account #1 each

7

month despite the bankruptcy filing in October 2005 through January 2011;

        c.      Defendant reported that Plaintiff had Credit Account #2, with a $4,290 balance;

        d.      Defendant continued negatively reporting on Credit Account #2 each month despite the bankruptcy filing in October 2005 through January 2011.

54. Despite multiple notices from the Bankruptcy Court of the Plaintiff's filing and subsequent discharge of bankruptcy, Defendant willfully and inaccurately continued reporting each month, for no less than sixty months (60), that Plaintiff's account was being charged off.

55. Plaintiff properly initiated a reinvestigation through a CRA, Experian, which then notified Defendant of Plaintiff's dispute.

56. Plaintiff sent a letter to Experian disputing the accuracy of the credit report in stating that she had included the delinquent accounts in her bankruptcy filing and requesting Experian reinvestigate the credit information provided by Defendant.

57. In a letter dated April 01, 2011, Experian notified Plaintiff of the results of the Defendant's investigation.

58. The Experian credit report number 0696-4683-38 is attached as Exhibit L.

59. On the updated Experian credit report Defendant continues to furnish the same incorrect information.

60. While the Defendant is not required to positively report Plaintiff is current in a pending Chapter 13 plan, the Defendant cannot continue to report negatively after the confirmation of the plan; Defendant was notified of the confirmation of the plan in December 2005.

61. After receiving multiple notices from the Bankruptcy court and a dispute letter

from the Plaintiff, by conducting a minimally reasonable reinvestigation the Defendant would have properly updated the information reported on Plaintiff's account.

62. Defendant's failure to have proper procedures in place to conduct a reasonable investigation of Plaintiff's account illustrates a reckless disregard for Plaintiff's rights under the FCRA.

63. The plain language of the FCRA's damages provisions permits Plaintiff to recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681n(a)(1)(A).

64. Plaintiff's ability to obtain credit at the best rates, if at all, was and is continuing to suffer on account of Defendant's inaccurate reporting.

65. By way of example without limitation, Plaintiff was denied the ability to obtain credit by multiple banks because of the credit information being wrongfully reported by Defendant.

66. This denial has prevented Plaintiff from obtaining a home equity loan to repair the roof on her home as required by the current city action against Plaintiff in Independence city court.

67. Plaintiff's actual damages include but are not limited to, the Plaintiff's loss of sleep, nervousness, frustration, humiliation, copy and postage costs, and mental anguish.

68. Further, minimum statutory damages between $100 and $1000 per violation, punitive damages, as well as the costs of the litigation and attorney fees are available when a furnisher willfully violates its duties under the FCRA. *Rodgers v. McCullough*, 296 F. Supp.2d 895 (W.D. Tenn. 2003).

69. Defendant was notified multiple times of the Plaintiff's bankruptcy, and furnished

inaccurate account information to the CRA.

70. Defendant was further notified through Plaintiff's letter requesting a reinvestigation that it was reporting inaccurate information on Plaintiff's credit report.

71. Yet, Defendant elected to ignore all of the notices and refused to correct Plaintiff's credit report.

72. The purpose of the reinvestigation is not simply to confirm that the credit reporting agency has recorded accurately the information initially furnished by the creditor, but also to determine in good faith the accuracy of the information itself in light of available information.

73. Defendant's failure to conduct a reasonable investigation and correct the inaccurate information reported over sixty (60) times on Plaintiff's credit report constitutes a willful violation of the FCRA.

### COUNT II
### (Violations under the Fair Credit Reporting Act to Equifax)

74. Plaintiff repeats, realleges and incorporates by reference each and every prior paragraph in this Complaint.

75. After being denied credit in January 2011 by West, Plaintiff reviewed her credit reports.

76. Defendant was furnishing inaccurate information to Equifax (a credit reporting agency) when:

    a. Defendant reported that Plaintiff had Credit Account #1, with a $73 balance;

    b. Defendant continues negatively reporting charge offs on Credit Account

10

#1 each month despite the bankruptcy filing in August 2006;

  c. Defendant reported that Plaintiff had Credit Account #2, with a $4,290 balance;

  d. Defendant continued negatively reporting charge offs on Credit Account #1 each month despite the bankruptcy filing in August 2006;

77. Plaintiff properly initiated a reinvestigation through a CRA, Equifax, which then notified Defendant of Plaintiff's dispute.

78. Plaintiff again tried to acquire credit and was denied credit based on her credit score.

79. In a denial letter from Embrace dated April 21, 2011, Plaintiff was notified that Defendant had failed to stop misreporting that her Credit Account #1 balance and Credit Account #2 balance were due totaling the amount of $4,363.

80. After receiving multiple notices from the Bankruptcy court and a dispute letter from the Plaintiff, by conducting a minimally reasonable reinvestigation the Defendant would have properly updated the information reported on Plaintiff's account.

81. As a result of Defendant's failure to conduct a reasonable reinvestigation, the Defendant caused Plaintiff to incur damages.

82. The plain language of the FCRA's damages provisions permits Plaintiff to recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681n(a)(1)(A).

83. Plaintiff's ability to obtain credit at the best rates, if at all, was and is continuing to suffer on account of Defendant's inaccurate reporting.

84. By way of example without limitation, Plaintiff was denied the ability to obtain

11

Case 4:12-cv-00128-SOW Document 1 Filed 01/26/12 Page 11 of 13

credit by multiple banks because of the credit information being wrongfully reported by Defendant.

85. This denial has prevented Plaintiff from obtaining a home equity loan to repair the roof on her home as required by the current city action against Plaintiff in Independence city court.

86. Plaintiff's actual damages include but are not limited to, the Plaintiff's loss of sleep, nervousness, frustration, humiliation, copy and postage costs, and mental anguish.

87. Further, minimum statutory damages between $100 and $1000 per violation, punitive damages, as well as the costs of the litigation and attorney fees are available when a furnisher willfully violates its duties under the FCRA. *Rodgers v. McCullough*, 296 F. Supp.2d 895 (W.D. Tenn. 2003).

88. Defendant was notified multiple times of the Plaintiff's bankruptcy, and nonetheless furnished inaccurate account information to the CRA.

89. Defendant was further notified through Plaintiff's letter requesting a reinvestigation that it was reporting inaccurate information on Plaintiff's credit report.

90. Yet, Defendant elected to ignore that information and refused to correct Plaintiff's credit report.

91. The purpose of the reinvestigation is not simply to confirm that the credit reporting agency has recorded accurately the information initially furnished by the creditor, but also to determine in good faith the accuracy of the information itself in light of available information.

92. Defendant's failure to have proper procedures in place to conduct a reasonable investigation of Plaintiff's account illustrates a reckless disregard for Plaintiff's rights under the

FCRA.

93. Defendant's failure to conduct a reasonable investigation and correct the information Defendant is furnishing to Equifax concerning Plaintiff's account constitutes a willful violation of the FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sherry Eileen Hawkins respectfully requests the Court to award the following:

a. Actual Damages;

b. Statutory Damages for each violation of the FCRA on each account;

c. Punitive Damages;

d. Costs and reasonable attorney's fees pursuant to the FCRA;

e. Removal of all misreported accounts from all of Plaintiff's credit reports;

f. For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted,

*/s/* Ryan D. Knipp

Ryan D. Knipp #58782
ryank@tlrlaw.com
Tracy L. Robinson & Associates
818 Grand Boulevard, Suite 600
Kansas City, MO 64106
Phone: (816) 842-1317
Fax: (816) 842-0315
admin@tlrlaw.com
Attorney for Plaintiff